FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

2026 JUL 31  P 12: 57

|  |  |  |
|---|---|---|
| JUDITH CASTILLO | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:26 CV 2348 |
| v. | ) | |
| | ) | |
| COUNTY OF ARLINGTON, VIRGINIA | ) | |
| | ) | **JURY TRIAL DEMAND** |
| Defendant. | ) | |
| | ) | |

---

**COMPLAINT FOR VIOLATION OF TITLE II OF THE
AMERICANS WITH DISABILITIES ACT**

Plaintiff Judith Castillo ("Ms. Castillo" or "Plaintiff") brings this action against the

County of Arlington, Virginia ("County" or "Defendant") and alleges as follows:

**PARTIES**

1.      Plaintiff is an adult resident of the Commonwealth of Virginia.

2.      At all relevant times, Ms. Castillo was a tenant in a Committed Affordable

Housing unit ("CAF Unit") located at 3110 10th Street North.

3.      Ms. Castillo began residing in the CAF Unit on August 3, 2017 and continuously

qualified for and renewed a lease under the Committed Affordable Housing Program ("CAF

Program") before the events giving rise to this action.

4.      Ms. Castillo is a qualified individual with a disability within the meaning of Title

II of the Americans with Disabilities Act.

5.      The County is a political subdivision of the Commonwealth of Virginia and a

public entity within the meaning of Title II of the Americans with Disabilities Act.

1

6.    The County administers, oversees, and enforces compliance with the CAF Program and the applicable Committed Affordable Housing Agreement ("CAF Agreement").

7.    In doing so, the County acts through its County Board, County Manager, Housing Division, County Attorney's Office, and other County officers, agents, and employees. The acts and omissions of those officials and employees described in this Complaint were undertaken on behalf of the County.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings a federal claim under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12133.

9.    This Court has personal jurisdiction over Arlington County because it is a Virginia political subdivision located in this district.

10.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in Arlington County, Virginia, within this district.

## FACTUAL BACKGROUND

*County Administered CAF Income Determination Practices*

11.    10th Street Flats LLC, doing business as Ten at Clarendon Apartments ("Ten at Clarendon"), owns and operates the residential property located at 3110 10th Street North in Arlington, Virginia.

12.    On June 29, 2017, the County Board of Arlington County, Virginia, and 10th Street Flats LLC entered into the CAF Agreement.

2

13.   County Manager Mark Schwartz executed the CAF Agreement on behalf of the County Board.

14.   CAF Units shall only be leased to and occupied by Low Income Households defined as households whose gross income does not exceed 60% of the Area Median Income ("AMI"), adjusted for household size. *(§ 1.01, at 2–3)*.

15.   Compliance with the *"Administration of Committed Affordable Rental Units (CAFs),"* attached as Exhibit D, is required. *(§§ 2.02(e), 2.06(a), at 5–6)*.

16.   Annually thereafter, the Owner shall obtain from each Tenant a signed "Income Certification for Committed Affordable Units Form" (Exhibit E) establishing continued eligibility "based on then current income" to occupy the CAF Unit. *(§ 2.06(a), at 6–7)*.

17.   A household becomes "over income" at lease renewal when its income exceeds 140% of the income limit for new qualifying households and no longer qualifies to occupy the CAF Unit at the restricted rent. *(§ 2.06(a), at 7)*.

18.   The County Manager has the right to inspect and make copies of all books, records, and other documents related to CAF Units to verify compliance. *(§ 2.06(c), at 7; § 2.11(b), at 10)*.

### Exhibit D

19.   "The requirements for determining whether a family is eligible for tenancy require the owner to project the annual income that the household expects to receive. There are several ways to make this projection." *(§ I.B.1 at 1)*.

20.   Acceptable methods for calculating anticipated annual income include:
(a) "Generally the owner must use current circumstances to anticipate income. The owner calculates projected annual income by annualizing current income;" and

(b) "If information is available on changes expected to occur during the year, use that information to determine the total anticipated income from all known sources during the year." *(§ I.B.1 at 1).*

21.     Once income sources are identified and verified, owners must convert reported income to an annual figure. *(§ I.B.2 at 1–2).*

22.     "Some circumstances present more than the usual challenges to estimating anticipated income . . . In all instances, owners are expected to make a reasonable judgment as to the most reliable approach to estimating what the tenant will receive during the year." *(§ I.B.2 at 2).*

23.     Verification of income and eligibility requirements must be conducted: (1) prior to move in, and (2) owners must re-verify each family's income and composition at each 12 month anniversary of move in. *(§ II.B, at 8).*

24.     Acceptable verification of employment income includes:
• "three consecutive recent pay statements showing gross amounts earned;"
• "For jobs which include tips or commissions, or in which the tenant works irregular hours from pay period to pay period, a third party verification form sent from management to the employer and back to management ("Employment Verification" form is available from the Housing Division)." *(§ II.C.4, at 11).*

25.     These provisions already required consideration of current circumstances and reasonable judgment in estimating anticipated income.

26.     Plaintiff's requested modification sought only an individualized projection of anticipated income that accounted for her disability related income interruption rather than using the future salary scale amount as the calculation of anticipated income.

4

27.     It did not seek waiver of the income limit or a fundamental alteration of the CAF Program.

***Salaried Employment, Disability, Medical Leave, Annual Reverification***

28.     Ms. Castillo has been a teacher with DCPS since August 12, 2018.

29.     Teachers are compensated under a salary scale that uses step based increases tied to education, experience, and years of service.

30.     The job does not include tips, commissions, or irregular hours.

31.     Ms. Castillo's disability is severe, chronic, and not readily apparent.

32.     Her disability substantially limits one or more major life activities, including concentrating, thinking, and working.

33.     From October 2023 to April 2024, Ms. Castillo was on medically documented leave related to her disability, including unpaid leave.

34.     At the time of annual reverification in July 2024, Ms. Castillo had substantially reduced year to date earnings of $32,645.

35.     The renewal limit for her CAF Unit, calculated as 140% of the applicable HUD 60% AMI limit, was $103,992.

36.     Her current salary was $100,011 pursuant to step 11.

37.     Her step was set to increase to 12 for the next school year on August 11, 2024.

38.     Step 12 carried an annual salary scale amount of $107,507.

39.     $107,507 was not itself a calculation of the gross income Ms. Castillo was expected to receive from August 3, 2024 to August 3, 2025.

40.     Ms. Castillo's disability related leave required reasonable judgment in selecting the most reliable method for estimating what she would receive.

*May 17, 2024* **to** *July 24, 2024*

41.     On May 17, 2024, Ten at Clarendon sent Ms. Castillo a lease renewal letter stating management was required to verify household income for annual certification by the Arlington County Housing Division and that her lease term expired on August 31, 2024.

42.     The letter stated the maximum income allowed for a two person household was $103,992 and required Ms. Castillo to submit three consecutive recent pay statements.

43.     Ms. Castillo's annual CAF reverification period ran from August 3, 2024 to August 3, 2025, although Ten at Clarendon's correspondence identified August 31, 2024 as the lease expiration date.

44.     On July 1, 2024, Ms. Castillo emailed Maritza Sixto three consecutive recent pay statements showing gross amounts earned.

45.     The documentation requested on May 17, 2024 did not include a Verification of Employment ("VOE") form or bank statements and identified tax returns only for self-employed persons.

46.     On July 8, 2024, after Ms. Castillo submitted the requested pay statements, Ten at Clarendon required a VOE form to be completed.

47.     The VOE form required DCPS to "[L]ist any anticipated change in the employee's rate of pay within the next 12 months."

48.     On July 24, 2024, Ms. Castillo provided the completed VOE form and a bank statement. Ten at Clarendon then required her tax return although she was not self-employed.

*Income Reported*

49.     The VOE form reported information shown on the three consecutive recent pay

6

statements submitted: a current annual salary of $100,011, gross year to date earnings of $32,645 from 01/26/24 to 07/12/24, 40 hours per week, no overtime, shift differential, or additional compensation.

50.     The reduced year to date earnings reflected Ms. Castillo's disability related leave and resulting income interruption.

51.     A salary scale increase effective August 11, 2024 was listed in response to "any anticipated change in the employee's rate of pay within the next 12 months."

*August 1, 2024*

52.     At 9:08 a.m., Ten at Clarendon emailed Ms. Castillo.

53.     "After a thorough review of your most recent income documentation, it is determined your household income exceeds the maximum income limits established for Arlington County's CAFS program."

54.     "As a result, you no longer qualify for the ADU you currently occupy. As a result, we will not be able to renew your lease and your current lease will terminate on September 30, 2024."

55.     At 10 a.m., Ms. Castillo emailed Maritza Sixto requesting the income limits used for the decision and the appeal process.

56.     At 10:34 a.m., Ms. Castillo called Mason Kushnir, Clerk to the County Board, directly at his number. The call lasted seven minutes.

57.     Through that call, Ms. Castillo sought assistance from the County and informed Mason Kushnir that six months of disability related medical leave, including unpaid leave, had reduced her earnings.

58.     At 11:43 a.m., Maritza Sixto responded to Ms. Castillo's 10 a.m. email.

7

59.    "You are correct, the maximum income limit for 2 people is $103,992. The projected verified income with your employer starting 8/11/2024 is $107,507."

60.    "You may contact Arlington County if you like to appeal the non-renewal decision.  Arlington County representative is Eric Timar. You may contact him at etimar@arlingtonva.us."

61.    At 12:32 p.m., Ms. Castillo emailed Ms. Sixto.

62.    Ms. Castillo explained that the employment verification showed $32,645 in gross earnings through July 12, 2024, that she was on track to earn substantially less than $100,000, and asked Ten at Clarendon to revise its conclusion.

63.    At 12:37 p.m., after her call with Mason Kushnir at 10:34 a.m., Ms. Castillo forwarded her email exchange with Maritza Sixto to him.

64.    At 1:28 p.m., Maritza Sixto emailed Ms. Castillo.

65.    "If you disagree with the non-renewal decision, you may contact Arlington County for further assistance."

66.    "Please understand that we are adhering to the certification process to ensure our property remains in compliance."

67.    At 3:27 p.m., Mason Kushnir responded to Ms. Castillo.

68.    "It sounds as though in this case, Eric Timar is your best point of contact to initiate an appeal."

*August 2, 2024*

69.    At 11:52 a.m., after placing a one-minute call to Eric Timar's direct number at 11:26 a.m., Ms. Castillo emailed him.

70.    "In my last exchange with the property, I shared my confusion with their

8

calculation and conclusion that I would exceed the limit of $103,992 in the next 12 months when I have earned $33,000 in the preceding eight."

71.   "My tax return for 2024 will probably be, at most, 70K."

72.   At 2:31 p.m., Eric Timar responded.

73.   "Management had already made me aware of this and shared with me the verification from your employer that your projected income over the coming 12 months is just over $107,000. Management first obtained a form completed by your employer and then followed up with an email exchange to be certain they had accurate information."

74.   "In the CAF program, projected income is used. This does mean that a raise can put a household over the maximum renewal income allowed, even if that rate of pay has not yet started. DC Public Schools wrote that the increase in income will become effective this month."

75.   "I'm also aware that you had unpaid time off in the previous 12 months; but the employment verification is clear that this is a full-time position, and again it's projected income that is used with these apartments. The recent pay statements I saw show that you had returned to work full time by at least May."

76.   By August 2, 2024, the County was aware that Ms. Castillo's six month disability related leave had substantially reduced her year to date earnings.

77.   Eric Timar acknowledged the unpaid time off Ms. Castillo experienced during the preceding twelve months, but stated the County relied on her full time employment status and the $107,507 salary scale amount in determining projected income.

78.   At 3:15 p.m., Ms. Castillo emailed Eric Timar.

9

79.    "If I understand you correctly, the fact that I am not going to make $103,000 or $107,000 in the next 12 months does not play a part in the decision, only that it is possible that I will."

80.    "[T]he fact that I have only earned $33,000 in the preceding eight months is not being used to approve me..."

81.    "There seems to be a flaw with the manner in which this decision has been made."

82.    At 4:10 p.m., Eric Timar responded.

83.    "The verification form from your employer, and the follow-up email, do state that you will earn just over $107,000 in the next 12 months."

84.    "The employer—specifically the Office of Employee Services—states that you will be working full time with a salary of '$107,507.00.'"

85.    DCPS identified a $107,507 salary scale amount effective August 11, 2024.

86.    Neither the VOE form nor DCPS's follow-up communication calculated Ms. Castillo's total anticipated earnings for the August 3, 2024 to August 3, 2025 lease period.

87.    At 5:03 p.m., Ms. Castillo emailed Eric Timar that she understood the 12-month salary scale, but the situation was not "black and white" or "one size fits all."

88.    She stated a salary scale did not reflect current income or a reliable projection and "removing a family based on a salary scale that hasn't been paid, doesn't seem reasonable."

89.    Eric Timar did not respond to Ms. Castillo again.

90.    He did not provide a calculation converting the reported income information into anticipated income for the lease period or explain how Ms. Castillo's anticipated income exceeded the $103,992 limit.

10

*August 8, 2024 to August 14, 2024*

91.     On August 8, 2024, Ms. Castillo emailed Eric Timar requesting "the written rules, regulations, policies, procedures, and/or law(s) that governed the decision."

92.     On August 12, 2024, at 3:53 p.m., David Barrera, County Board Communications and Policy Manager, emailed Ms. Castillo.

93.     "I am including the Committed Affordable Housing Program Agreement for Ten at Clarendon that Housing Division staff is referencing. Exhibit D (Page 30) lists the determination and verification of income section, which includes the eligibility requirements."

94.     "As I understand it, you've also asked for the Board to review this situation. I am touching base with Board members and will provide you a response when I can."

95.     On August 14, 2024, at 1:16 p.m., Ms. Castillo emailed David Barrera.

96.     "Thank you for the information. I do not read in the attached about using a salary scale to determine eligibility. I did read about using current income and reasonable judgment."

97.     Ms. Castillo referenced additional Exhibit D provisions requiring use of current circumstances, reasonable judgment, and the most reliable approach to estimating what the tenant will receive during the year.

98.     Ms. Castillo asked the County again to explain how it calculated she would exceed the $103,992 income limit when the documents required current circumstances, reasonable judgment, and an estimate of what she was expected to receive during the year.

**September 24, 2024** *to September 26, 2024*

99.     On September 24, 2024, at 3:52 a.m., Ms. Castillo emailed Mason Kushnir and David Barrera.

100. "Could you please provide me with the official response from the county? Also, I did not receive a response from David Barrera per my last email to him."

101. At 12:28 p.m., David Barrera responded to Ms. Castillo.

102. "Our understanding is that Housing Division staff responded to you after our inquiry on this issue and explained the rules governing the property agreement as well as how income is projected based on that agreement."

103. "The Board does not have the ability to intervene in this administrative issue nor direct that an alternative calculation be used under the attached property agreement."

104. "Household income in the County's Committed Affordable Unit (CAF) program is projected for the 12-month period after a lease is signed; this is an industry standard, and is the same approach used by the HUD Low-Income Housing Tax Credit program."

105. "We understand that you may disagree with the eligibility criteria used, but it is a standard criteria used in all of the County's CAFs."

106. "The Board Office, unfortunately, is unable to assist you further on this issue and encourages you to reach out to Ms. Randall should you have any further questions."

107. Chapter 5 of HUD Handbook 4350.3 contains provisions reflected in the CAF Agreement and Exhibit D, including the requirement to convert reported income to an annual figure and the requirement to make a reasonable judgment as to the most reliable approach to estimating what the tenant will receive during the year.

108. For an anticipated increase in rate of pay, the Handbook's example calculates annual income by using the current rate for the period before the increase and the new rate for the period after the increase. *(Ch. 5, ¶ 5-5.B).*

109. On September 25, 2024, at 5:34 p.m., Ms. Castillo emailed Marie Randall.

12

110. "Please advise on the formal appeals process pursuant to the below email exchange with David Barrera."

111. On September 26, 2024, at 11:51 a.m., Marie Randall responded.

112. "Eric Timar's review of property management's calculations based on the income verification form from your employer and the requirements in the CAF Agreement for Ten at Clarendon concludes the Housing Division's review process."

113. The County stated that the requirements and process stated in the CAF Agreement were being followed by property management.

114. On September 26, 2024, at 4:26 p.m., Ten at Clarendon sent Ms. Castillo an email: "Your household currently exceeds the maximum income allowable limit for the ADU program, which disqualifies you from renewing when your current lease expires on September 30, 2024."

115. "We request that you contact us as soon as possible so we can discuss your options. If we do not hear from you before 5:00 pm on Monday, September 30, 2024, we will consider you a holdover and refer your case to our legal department to initiate the eviction process."

*October 4, 2024*

116. On October 4, 2024, Ten at Clarendon emailed Ms. Castillo a Notice of Nonrenewal and Termination of Lease bearing the date October 5, 2024 stating her lease would not be renewed and her tenancy would terminate on December 31, 2024.

*January 16, 2025 to February 11, 2025*

117. On January 16, 2025, Ten at Clarendon filed an unlawful detainer action in

13

Arlington County General District Court and a hearing was set for February 11, 2025.

118.    On February 11, 2025, Ms. Castillo appeared pro se and requested a trial date at the end of the school year in June or July. The matter was scheduled for trial on April 14, 2025.

*March 14, 2025*

119.    On March 14, 2025, Ms. Castillo filed a Motion for Continuance, Answer and Grounds of Defense in the unlawful detainer action and served it on Ten at Clarendon through its counsel.

120.    Ms. Castillo stated in writing that her disability caused a six month unpaid medical leave from October 2023 through April 2024.

121.    She identified the CAF Agreement provisions requiring the owner to use current circumstances, annualize current income, and exercise reasonable judgment when unusual circumstances make anticipated income difficult to estimate.

122.    She stated that DCPS had verified year-to-date earnings of $32,645.37, a then-current salary of $100,011, and a scheduled change in rate of pay, and that Ten at Clarendon had not shown a calculation converting those verified facts into the annual income she was expected to receive during the applicable certification period.

123.    Ms. Castillo stated Ten at Clarendon had failed to use reasonable judgment to accommodate her "more than the usual situation and challenging circumstances" in assessing her income for 2024–2025 and requested dismissal of the action.

124.    She also requested that the April 14 trial be continued because proceeding during the school year would exacerbate her disability, expressly identifying the continuance as a reasonable accommodation.

*April 14, 2025*

125. On April 14, 2025, while on disability related medical leave from work that had begun on April 7, 2025, Ms. Castillo appeared before Judge Steele in Arlington County General District Court for trial in the unlawful detainer action.

126. At the outset of trial, Judge Steele denied Ms. Castillo's March 14, 2025 Motion for Continuance.

127. Ten at Clarendon's counsel argued that Ms. Castillo was ineligible, that she was occupying a unit for which she did not qualify, and that the unit should be made available for someone who did.

128. Ms. Castillo maintained her income remained below the applicable limit.

129. Following trial, the court entered an Unlawful Detainer Order in favor of Ten at Clarendon.

130. Ms. Castillo appealed the General District Court unlawful detainer judgment.

*April 25, 2025*

131. On April 25, 2025, Ms. Castillo sent Arlington County Manager Mark Schwartz a written request for immediate assistance and an appropriate remedy concerning Ten at Clarendon's refusal to account for her disability related medical leave when it determined her anticipated income and took the resulting unlawful detainer action.

132. Ms. Castillo informed Mr. Schwartz that during August and September 2024 she had sought assistance from County officials and employees concerning the nonrenewal of her affordable housing lease.

133. She stated Ten at Clarendon had relied on her scheduled August 2024 salary increase to $107,507 despite her then current salary of $100,011, year to date earnings of

15

$32,645.37, and the substantial loss of income caused by her six month ADA medical leave.

134.    Ms. Castillo quoted the CAF Agreement provisions requiring the owner to use current circumstances, annualize current income, and exercise reasonable judgment when unusual circumstances make anticipated income difficult to estimate.

135.    She informed the County Manager that she had testified at the April 14, 2025 trial about her six month ADA medical leave and substantially reduced year to date earnings.

136.    She wrote that Ten at Clarendon, through its counsel, had objected to admission of the CAF Agreement, that the court had not admitted the Agreement into evidence, and that an unlawful detainer judgment had been entered against her.

137.    Ms. Castillo asserted that Ten at Clarendon had failed to follow the CAF Agreement by failing to account for her current circumstances, her disability, and the income loss caused by her medical leave when estimating her anticipated income.

138.    She asked the County to remedy that failure.

139.    She further informed Mr. Schwartz that the applicable 2025 income limit had increased to $110,208 and that her current income did not exceed that limit.

140.    As the reason for immediacy, Ms. Castillo advised the County Manager that the matter was scheduled for a May 5, 2025 proceeding in Arlington County Circuit Court.

141.    Through her letter to the County Manager, Ms. Castillo requested that the County modify its method of determining her anticipated income to account for her disability related leave, current circumstances, and actual earnings.

*May 1, 2025 and May 5, 2025*

142.    On May 1, 2025, at 4:20 p.m., Katelyn Thomas emailed Ms. Castillo, copying Anne Venezia, Housing Director.

16

143.    "I understand this has been a difficult process, and I appreciate the time you've taken to explain your concerns."

144.    "We've reviewed the matter with relevant county staff. Based on the information available, it appears the property owner followed the terms of the ADU program, which requires income eligibility to be based on projected earnings at the time of lease renewal."

145.    "As the matter is now subject to court proceedings, the County is not able to intervene directly . . . I am copying our Housing staff [Marie Randall, Eric Timar, and Anne Venezia, Housing Director] on this thread as they are best suited to help with the technical of your situation."

146.    The Circuit Court held a hearing on May 5, 2025 and continued the matter to May 30, 2025.

147.    After the May 5 hearing, Ms. Castillo hand delivered her 2024 W-2 showing $69,692.41 in earnings to Ten at Clarendon and asked it to dismiss the eviction action.

148.    Ten at Clarendon did not dismiss the action.

### *May 26, 2025 and May 30, 2025*

149.    On May 26, 2025, Ms. Castillo filed a Praecipe and Motion for Continuance.

150.    On the morning of May 30, 2025, the Circuit Court denied the motion and granted Ten at Clarendon's motion to dismiss the appeal.

151.    The written order cited Virginia Code § 8.01-126 in stating that the appeal had not been perfected and reinstated the General District Court judgment.

152.    On the May 30, 2025 dismissal order, Ms. Castillo handwrote that she objected to dismissal because Ten at Clarendon was pursuing an eviction that she believed was unlawful and discriminatory, and that she had appeared and argued the matter under duress caused by her

17

disability while receiving intensive medical care.

153.    Later that day, at 3:46 p.m., Ms. Castillo filed a motion in Circuit Court stating that her disability and resulting fear and distress had impaired her ability to defend herself and present evidence at the April 14, 2025 trial, including her 2024 W-2 showing earnings of $69,692.41.

154.    She stated that before the April 14, 2025 trial, she had requested a continuance citing her disability and distress at being sued by Ten at Clarendon based on its claim that her income was too high to lease an affordable dwelling unit.

### *June 6, 2025 and June 10, 2025*

155.    On June 6, 2025, Emily Newsom of Housing Opportunities Made Equal of Virginia ("HOME") sent a reasonable accommodation request letter to Maritza Sixto and to Ten at Clarendon's counsel, Mazin Elias.

156.    HOME's letter requested two accommodations: (1) if required, additional time to move out; and (2) an accommodation modifying the income determination to account for Ms. Castillo's disability related leave and income interruption.

157.    HOME's June 6, 2025 letter formalized and renewed Ms. Castillo's request for modification of the income determination to account for her disability related leave and income interruption.

158.    On June 10, 2025, Emily Newsom emailed Nicole Dula of Arlington County and transmitted the June 6, 2025 reasonable accommodation request to the County.

### *June 20, 2025*

159.    On June 20, 2025, Crystal Kramer emailed Emily Newsom: "My client will file

the writ of eviction no earlier than July 30, 2025, so that they have the process in motion in the event Ms. Castillo does not vacate, and they will not schedule the eviction with the sheriff until a date of August 6, 2025 or later."

### *July 1, 2025*

160. On July 1, 2025, Emily Newsom emailed Eric Timar a reasonable accommodation request letter.

161. Ms. Newsom outlined the record and stated Ten at Clarendon had indicated it was unable to alter use of $107,507 as projected income because the guidelines were set by the County and the County would need to grant the requested accommodation.

162. HOME's July 1, 2025 letter formalized and renewed Ms. Castillo's April 25, 2025 written request to the County for a disability related modification of the income determination.

### *July 8, 2025*

163. On July 8, 2025, Brenda Heffernan, Assistant County Attorney, emailed Emily Newsom, copying County Attorney Ryan Samuel, Eric Timar, and Marie Randall, who were copied on all communications between Brenda Heffernan and HOME.

164. "It is my understanding that at the time of Ms. Castillo's lease renewal (August 2024), Ms. Castillo was projected to earn and did in fact receive a salary increase which put her over the 140% move-in maximum income limit for a Committed Affordable (CAF) unit at Ten at Clarendon."

165. "At no time did Ms. Castillo indicate that she anticipated earning less than her 2024-2025 projected salary, nor did she provide evidence that she did earn less for the 2024-2025

19

school year."

166.    "Yet, she refused to vacate the CAF unit despite being over-income."

167.    "Amending Arlington's income verification policy would not change the fact that in August 2024 Ms. Castillo was over-income and no longer qualified to rent a CAF unit."

168.    "Based on the foregoing, we are unable to consider your request."

169.    The County's denial did not address Ms. Castillo's disability related leave or resulting income interruption.

### *July 25, 2025 and July 28, 2025*

170.    On July 25, 2025, Brenda Castañeda emailed Brenda Heffernan.

171.    "Ms. Castillo's housing provider has indicated to her that she must request such an accommodation to the projected income policy from Arlington . . ."

172.    She requested that the County engage in the interactive process and explain the basis for denying modification of the income determination.

173.    "Time is of the essence, as Ms. Castillo has only 2 weeks before her landlord will evict her."

174.    On July 28, 2025, Brenda Heffernan responded.

175.    "In order to entertain Ms. Castillo's request for a reasonable accommodation, please provide the following..." followed by household size in August 2024; current household size; current annual income; total income earned for the 2024–2025 school year; and anticipated income for 2025–2026.

### *July 29, 2025*

176.    On July 29, 2025, at 5:00 p.m., Emily Newsom emailed Crystal Kramer that

20

additional time was needed to determine whether the County would grant the accommodation and, if granted, HOME would request Ms. Castillo be permitted to renew her tenancy and remain in the unit.

177. At 5:01 p.m., Emily Newsom emailed Brenda Heffernan the following income information: Ms. Castillo's year to date pay of $61,856, her 2024 W-2 earnings of $69,692.41, and the salary scale amount for the 2025–2026 school year of $112,947.

178. Following the April 14, 2025 hearing, Ms. Castillo entered a disability related outpatient treatment program on April 23, 2025. Her medical leave included unpaid leave.

179. She disclosed that medical leave in her May 26, 2025 court filings served on Ten at Clarendon along with medical documentation stating that her disability related medical needs required full participation in a daily intensive treatment program and that defending against eviction had caused her to miss days and portions of treatment.

180. Ms. Castillo's actual gross earnings during the August 3, 2024 through August 3, 2025 lease period were below the $103,992 income limit, as confirmed by her payroll records and corroborated by her year to date pay of $61,856 on July 29, 2025 and her 2024 W-2 earnings of $69,692.41.

***July 30, 2025***

181. At 1:58 p.m., Crystal Kramer responded to Emily Newsom.

182. "The request is not reasonable at this point, as no change in policy has occurred."

183. "Even if it does occur, my client abided by the terms of the policy that existed at the time of the underlying action, which is the policy that governed their conduct and ultimately led to the court's order authorizing my client possession."

184. At 2:14 p.m., Emily Newsom emailed Brenda Heffernan.

21

185.    "Dear Arlington County, Ten at Clarendon owners are going to file a Writ on Tuesday, August 5, 2025, against Ms. Judith Castillo."

186.    "We need to know Arlington County's response to the below message regarding her Reasonable Accommodation request."

187.    At 2:18 p.m., Brenda Castañeda responded to Crystal Kramer that, based on a prior call, HOME understood the accommodation had to be granted by the County before Ten at Clarendon would accommodate.

188.    At 2:25 p.m., Crystal Kramer wrote: "If and when Arlington changes their policy, then please let me know what that new policy is and when they deem it to take effect (along with supporting documentation from the County), and I will discuss it with my client."

189.    At 3:20 p.m., Brenda Heffernan responded to Emily Newsom's 2:14 p.m. email.

190.    "Based on the new information, which was provided to us yesterday, Arlington County will consider Ms. Castillo's request for a reasonable accommodation."

191.    "In the meantime, we will ask management at Ten at Clarendon to postpone filing the writ of eviction in order for the County to consider Ms. Castillo's request."

192.    "We will be back in touch next week, after we have had a chance to speak with management and County staff (some of whom are out this week), and let you know when we will have a decision."

193.    At 5:21 p.m., Brenda Castañeda emailed Crystal Kramer.

194.    "Below is an email we just received from Brenda Heffernan [3:20 p.m.] confirming they are now considering Ms. Castillo's request."

195.    At 5:22 p.m., Crystal Kramer responded.

22

196. "If the policy is changed and an accommodation request is made, then my client and I will discuss the request at that point."

197. On July 30, 2025, Crystal Kramer electronically signed a Request for Writ of Eviction.

**August 1, 2025 to August 28, 2025**

198. On August 1, 2025, Arlington County General District Court time stamped the writ request at 11:05 a.m.

199. At 4:04 p.m., Brenda Heffernan emailed Emily Newsom.

200. "Following my email to you yesterday, I learned that the writ of eviction has already been filed and the Sheriff's Office will proceed with executing the writ (which may occur as early as the end of next week)."

201. "Unfortunately, Ms. Castillo did not request a reasonable accommodation prior to the court rendering a decision and we are unable to amend the County's policy retroactively."

202. "Please contact the Arlington County Office of Human Rights and they will be able to assist with the interactive process."

203. The County's August 1, 2025 response did not address the income information HOME had provided on July 29, the merits of the requested modification, or the County's statement the previous day that it would consider the request.

204. The County did not complete the accommodation review it had stated it would undertake before the writ was executed.

205. On August 19, 2025, Legal Services of Northern Virginia ("LSNV") filed on Ms. Castillo's behalf a motion to vacate the judgment, quash the writ, and dismiss the eviction.

206. LSNV requested postponement of the eviction pending the General District

23

Court's consideration of the motion.

207.    Ten at Clarendon refused to agree to postpone the eviction.

208.    On August 21, 2025, the Arlington County Sheriff's Office executed the writ of eviction.

209.    On August 28, 2025, Arlington County General District Court denied LSNV's motion.

## COUNT I
### Violation of Title II of the Americans with Disabilities Act
### 42 U.S.C. § 12132

210.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

211.    Plaintiff is an individual with a disability within the meaning of Title II of the ADA.

212.    Defendant is a public entity, and the CAF Program is a service, program, or activity administered and overseen by Defendant.

213.    Plaintiff was a qualified individual because, with the requested reasonable modification to Defendant's income determination practices, she met the essential eligibility requirements for continued participation in the CAF Program, including continued occupancy of her CAF Unit.

214.    The requested modification required only an individualized projection of anticipated income that accounted for Plaintiff's disability related income interruption rather than using the future salary scale amount as the calculation of anticipated income.

215.    Plaintiff informed Defendant that her disability had caused six months of medical

leave, including unpaid leave, which had substantially reduced her actual earnings.

216. Beginning August 1, 2024, Plaintiff repeatedly requested that Defendant account for her disability related leave, actual earnings, and current circumstances rather than using the salary scale amount of $107,507 as the calculation of her anticipated income.

217. On April 25, 2025, Plaintiff made a written request to Defendant for a disability related modification of the income determination and an appropriate remedy.

218. HOME formalized and renewed Plaintiff's request in June and July 2025.

219. The requested modification was reasonable, necessary to avoid discrimination on the basis of disability, and consistent with the CAF Agreement provisions requiring use of current circumstances and reasonable judgment when estimating anticipated income.

220. Plaintiff's requested modification would not have fundamentally altered the CAF Program, and Defendant did not identify any fundamental alteration that would result from the requested modification.

221. Defendant refused to modify its administration of the CAF Program or reconsider the income determination.

222. Defendant did not direct or require Ten at Clarendon to reconsider its determination or apply the governing income determination provisions to Plaintiff's disability related circumstances.

223. Defendant did not calculate, or require Ten at Clarendon to calculate, what Plaintiff was expected to receive during the twelve month lease period.

224. Directly and through its contractual arrangement with Ten at Clarendon, Defendant used criteria and methods of administration that denied Plaintiff equal access to the benefits of the CAF Program and denied her continued participation in the Program on the basis

of her disability.

225. After stating it would consider Plaintiff's request and ask Ten at Clarendon to postpone the writ of eviction, Defendant failed to complete an individualized review of the requested modification.

226. On August 1, 2025, Defendant denied the request without addressing the supporting income information HOME provided on July 29, 2025.

227. Defendant had the authority to address the discrimination and take corrective action.

228. Defendant had actual knowledge of Plaintiff's disability, her disability related income loss, her requested modification, the threatened loss of housing, and the substantial likelihood that failing to respond appropriately would violate her federally protected rights.

229. Despite that knowledge, Defendant failed to respond appropriately or take corrective action.

230. Defendant acted intentionally and with deliberate indifference to Plaintiff's federally protected rights.

231. As a direct result of Defendant's conduct, Plaintiff was subjected to court proceedings and evicted from the CAF Unit.

232. Plaintiff suffered financial and other compensable harm.

233. Defendant's conduct violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and its implementing regulations.

234. Plaintiff does not ask this Court to review or overturn any state-court judgment. Plaintiff seeks damages for the County's own acts and omissions in administering the CAF Program and responding to her request for a reasonable modification.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against Defendant Arlington County and:

1. Award Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff reasonable attorney's fees, litigation expenses, costs, and prejudgment and postjudgment interest to the extent permitted by law; and

3. Award Plaintiff such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff Judith Castillo demands a trial by jury on all issues so triable.

Dated:        July 31, 2026

Respectfully,

JUDITH CASTILLO
Plaintiff, Pro Se
8303 Keeler Street
Alexandria, VA 22309
(202) 914-7391
jdrc2011@gmail.com

FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
_____Alexandria_____ **DIVISION**

2026 JUL 31 ℙ 1: 06

Judith Castillo
_____
        **Plaintiff(s),**

    v.

Civil Action Number: ___1:26 CV 2348___

County of Arlington, Virginia
_____
        **Defendant(s),**

## LOCAL RULE 83.1 (N) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared or assisted in the preparation of** COMPLAINT FOR VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT____ .
                                               **(Title of Document)**

    Judith Castillo
_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: ___July 31, 2026___ (Date)

                            **OR**

**The following attorney(s) prepared or assisted me in preparation of** _____ .
                                                     **(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)